IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civ. Action No. 8:21-cv-00557-PX |
| MALCOLM HILL, *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending before the Court is Plaintiff Joe Hand Promotions, Inc.'s ("Joe Hand's") motion for default judgment. ECF No. 21. Defendants Malcolm Hill and Innovative Security Concepts, LLC, doing business as Invictus Cigars ("Invictus"), have not responded to the Complaint or this motion, and the time for doing so has passed. *See* Loc. R. 105.2.a. The matter has been briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motion for default judgment is GRANTED. ECF No. 21.

**I.     Background**

Plaintiff Joe Hand licenses and distributes televised sporting events to bars, restaurants, and other commercial establishments throughout the United States. ECF No. 1 ¶ 7. Showtime Pay Per View, as the exclusive distributor in the continental United States of the *Deontay Wilder v. Tyson Fury* broadcast (the "Event"), granted Joe Hand the exclusive third-party license to distribute the Event to commercial establishments. ECF No. 1 ¶ 8; ECF No. 21-9 at 1. Joe Hand, in turn, sold access to the satellite transmission of the Event to establishments in exchange

1

for a fee.  ECF No. 1 ¶ 9.  This licensing fee was calculated based on the fire code maximum occupancy of the establishment.  ECF 21-10.

On December 1, 2018, Defendant Invictus broadcasted the Event to its patrons without first obtaining a license from Joe Hand.  ECF No. 1 ¶¶ 11–12.  Frederick Garrity, an auditor employed by Joe Hand, visited Invictus on December 1, 2018, and observed the Event being broadcasted to patrons on six television sets.  ECF No. 21-5 at 1.  At the door, Garrity had to either pay a $10 cover charge or buy a cigar.  *Id.* at 1.  Garrity also recognized that the "owner/manager," Mr. Hill, was on the premises that evening.  *Id.* at 1; ECF No. 21-6.  Garrity approximates that Invictus could maintain 60 to 70 patrons at maximum capacity, and that night, between 30 and 43 people were there while the Event was playing on the televisions.  ECF 21-5 at 2.

On March 4, 2021, Joe Hand filed suit against Invictus and Hill for violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (the "Communications Act").  ECF No. 1 ¶¶ 3, 16–17.  After several failed attempts to serve Defendants, Joe Hand moved for alternate service on October 12, 2021, which this Court granted.  ECF Nos. 8 & 10.  After service was effectuated, Defendants failed to respond or otherwise participate in the litigation.  The Clerk of this Court entered default against Defendants on May 12, 2022, pursuant to Federal Rule of Civil Procedure 55(a).  ECF No. 18.  On July 5, 2022, Joe Hand moved for default judgment as to both Defendants.  ECF No. 21.  For the reasons discussed below, the motion is granted.

    **II.**    **Standard of Review**

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure

is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). While the Fourth Circuit maintains a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate where a party is unresponsive, *S.E.C. v. Lawbaugh,* 359 F. Supp. 2d 418, 421 (D. Md. 2005).

When considering a motion for default judgment, the Court accepts as true all well-pleaded factual allegations, other than those pertaining to damages. *See id*. at 422; Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). To determine whether the allegations are well-pleaded, the Court applies the standards announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See, e.g., Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). Where a complaint offers only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement," the Court will not enter default judgment. *Id*. at 545 ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

If the Complaint avers sufficient facts from which the Court may find liability, the Court next turns to damages. Damages are circumscribed by that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The damages request must be supported by evidence introduced either at a hearing or by affidavit or other records. *See id.*; *see also Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010).

### III. Analysis

Recognizing that a plaintiff cannot recover under both Sections 553 and 605 of the Communications Act, *see J & J Sports Prods., Inc. v. Royster*, No. RWT-11-1597, 2014 WL 992779, at *2 (D. Md. Mar. 13, 2014), Joe Hand seeks to recover under only Section 605.  ECF 21-1 at 5.  Accordingly, the Court need not reach Joe Hand's alternative claim that Defendants violated Section 553 and considers only whether Joe Hand should be awarded default judgment on his Section 605 claim.

### A. Liability

Section 605 of the Communications Act provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."  47 U.S.C. § 605(a).  This provision covers "the unauthorized interception or receipt of 'digital satellite television transmissions'" such as the Event.  *J & J Sports Prods., Inc. v. Beer 4 U, Inc.*, No. TDC-18-2602, 2019 WL 5864499, at *3 (D. Md. Nov. 8, 2019) (quoting *J & J Sports Prods., Inc. v. MayrealII, LLC*, 849 F. Supp. 2d 586, 588 n.3 (D. Md. 2012)).  To establish liability, Joe Hand must show that "it had the exclusive commercial distribution rights" to the Event, and that Invictus and Hill exhibited the Event "without authorization."  *Beer 4 U*, 2019 WL 5864499, at *3.

Accepting the Complaint facts as true, Defendant Invictus violated Section 605 of the Communications Act in broadcasting the Event without a license.[1]  It is clear that Joe Hand possessed an exclusive third-party license from Showtime Pay Per View to distribute broadcast

---

[1] Joe Hand has also submitted affidavits and other supporting documentation, which this Court may consider in resolving the motion.  *See* Fed. R. Civ. P. 55(b)(2); *see also Balt. Line Handling*, 771 F. Supp. 2d at 541–45; *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 374 (D. Md. 2012).

rights to commercial establishments such as Invictus.  ECF No. 1 ¶ 8; ECF No. 21-9 at 1.  It is equally clear that Invictus never obtained a license from Joe Hand before broadcasting the Event on December 1, 2018.  ECF No. 1 ¶¶ 11–12.  Accordingly, Invictus is liable for violating Section 605 of the Communications Act.  *See That's Ent., Inc. v. J.P.T., Inc.*, 843 F. Supp. 995, 999 (D. Md. 1993) (holding a corporate defendant liable for the unauthorized broadcast of a boxing match to patrons at its commercial establishment).

Joe Hand has also averred sufficient facts to establish Hill's liability under Section 605.  Vicarious liability under the statute extends where an individual defendant maintained the "'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct."  *MayrealII,* 849 F. Supp. 2d at 589 (quoting *J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009)).  Although courts part company on the quantum of proof necessary to establish such liability, *compare J&J Sports Prods., Inc. v. L & J Group, LLC,* No. RWT-09-3118, 2010 WL 816719, at *2 (D. Md. Mar. 4, 2010), *with MayrealII,* 849 F. Supp. 2d at 592, Hill had sufficient involvement in the broadcast of the Event such that he may be held liable.  The Court accepts that Hill maintained an ownership interest in Invictus.  ECF No. 1 at ¶ 3; ECF No. 21-6.  Additionally, Hill was on premises during the broadcast of the Event at Invictus, and oversaw operations that evening, including charging a cover at the door for the Event.  ECF No. 21-5.  Hill is thus liable for violating Section 605 of the Communications Act.

The Court next considers Joe Hand's request for damages.

**B.     Damages**

Joe Hand seeks a total of $2,500 in statutory damages, only part of which is properly supported.  ECF No. 21-1 at 6.  The Communications Act allows a court to impose "a sum of not

less than $1,000 or more than $10,000, as the court considers just," for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). The "statutory damages should approximate the amount the Plaintiff is out-of-pocket due to the violation." *Joe Hand Promotions, Inc. v. Luz, LLC*, No. DKC-18-3501, 2020 WL 374463, at *2 (D. Md. Jan. 23, 2020) (quotation omitted). Here, the fees otherwise due to Joe Hand—$1,450 based on the maximum occupancy of Invictus—represent a reasonable and just award. ECF No. 21-10; *see J & J Sports Prods., Inc. v. Plaza Del Alamo, Inc.*, No. TDC-15-0173, 2016 WL 153037, at *3 (D. Md. Jan. 12, 2016). Accordingly, the Court easily finds that Joe Hand is entitled to $1,450 in statutory damages.

Joe Hand seeks an additional $1,050 in statutory damages, representing a "modest estimate" of profits realized from the cover charge and other purchases. ECF 21-1 at 8. But the numbers do not add up. At $10 per patron, and given the maximum number of occupants whom Garrity observed (43), the estimated profits amount to $430. Joe Hand provides no explanation or evidentiary support for seeking more than double that amount. Thus, the Court awards an additional $430, for a total of $1,880 in statutory damages.

Joe Hand also seeks $12,500 in enhanced damages. ECF No. 21-1 at 11. If evidence demonstrates that "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000." 47 U.S.C. § 605(e)(3)(C)(ii). Several factors guide the propriety of awarding enhanced damages, to include "(1) evidence of willfulness; (2) repeated violations over an extended period of time; (3) substantial unlawful monetary gains; (4) advertising the broadcast; and (5) charging an admission fee or charging premiums for food and drinks." *J & J Sports Prods., Inc. v. Quattrocche*, No. WMN-09-3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2010)); *see also J&J Sports Prods., Inc. v. KD Retail,*

*Inc.*, No. PX-16-2380, 2017 WL 1450218, at *2 (D. Md. Apr. 20, 2017).  Applying those factors here, the Court awards enhanced damages, albeit less than Joe Hand's requested amount.

It is plain that Defendants willfully intercepted an encrypted satellite broadcast without the permission of Joe Hand.  *See J & J Sports Prods., Inc. v. Castro Corp.*, No. 11-00188-AW, 2011 WL 5244440, at *4 (finding that defendant willfully intercepted an encrypted broadcast because "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems") (quotation omitted); *see also KD Retail*, 2017 WL 1450218, at *2.  But no evidence reflects that Defendants have repeatedly violated the Communications Act, or that they advertised the anticipated broadcast of the Event.  However, Defendants did require that patrons pay a $10 fee or buy a cigar at the door, and so they clearly profited from this interception.  ECF No. 21-5 at 1.  Defendants also chose not to participate in this litigation entirely.  On this record, the Court awards enhanced damages of five times the statutory damages, or $9,400.  *See KD Retail*, 2017 WL 1450218, at *2; *Zuffa, LLC v. Ferrell*, No. 20-0273-PX, 2021 WL 2315458, at *5 (D. Md. June 7, 2021).

Finally, as the prevailing party, Joe Hand may recover reasonable attorneys' fees and costs.  *See* 47 U.S.C. § 605(e)(3)(B)(iii).  "The party seeking fees bears the burden of proving the reasonableness of the amount sought."  *J & J Sports Prods. v. Mumford*, No. DKC-10-2967, 2013 WL 210623, at *2 (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009)).  Counsel for Joe Hand attest to having spent six hours pursuing this matter, billing at an hourly rate of $250, for a total of $1,500 in attorneys' fees.  ECF No. 21-3 at 2.  Joe Hand seeks an additional $722 for costs in filing suit and effectuating service of process.  Given the nature of this litigation, the Court finds the request reasonable.  *See J&J Sports Prods., Inc. v.*

*LaCasa Del Mofongo LLC*, No. 18-01283-PX, 2018 WL 6046839, at *3.  Accordingly, the Court awards Joe Hand attorneys' fees and costs totaling $2,222.

## IV.     Conclusion

For the above reasons, Plaintiff Joe Hand's default judgment motion is granted, and judgment is entered in the amount of $13,502 jointly and severally against Defendants Hill and Invictus.  A separate Order follows.

 10/6/2022  
Date

/S/  
Paula Xinis  
United States District Judge